IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
ERIE DIVISION

| | |
|---|---|
| LORETTA SHEPARD, ) | |
| ) | |
| Plaintiff ) | 1:23-CV-00268-RAL |
| ) | |
| vs. ) | RICHARD A. LANZILLO |
| ) | Chief United States Magistrate Judge |
| MICHELLE OVERMEYER, CAMBRIDGE ) | |
| SPRINGS SUPERINTENDENT; ) | MEMORANDUM OPINION ON DOC |
| KIMBERLY DREISCHALICK, ) | DEFENDANTS' MOTION TO DISMISS |
| CORRECTIONS OFFICER; KELLY ) | |
| CLAYPOOLE, CORRECTIONS OFFICER; ) | IN RE: ECF NO. 20 |
| JAMES MORRIS, CORRECTIONS ) | |
| OFFICER; STEPHEN HAGGRITY, ) | |
| CORRECTIONS OFFICER; ALFONZIA ) | |
| NEWSOME, CORRECTIONS OFFICER; ) | |
| TANYA MAYO, CORRECTIONS ) | |
| OFFICER; RICHARD MIDDENDORF, ) | |
| CORRECTIONS OFFICER; EMBER ) | |
| BLINN, CORRECTIONS OFFICER; ) | |
| CAPTAIN ERIC BURNS, HEIDI DUGAN, ) | |
| ACTING CAPTAIN OF THE SECURITY ) | |
| OFFICE; AND SIMEON OBENG, ) | |
| ATTENDING PHYSICIAN, ) | |
| ) | |
| Defendants ) | |
| ) | |

Plaintiff Loretta Shepard ("Shepard") is an inmate in the custody of the Pennsylvania Department of Corrections ("DOC") at its State Correctional Institution at Cambridge Springs ("SCI-Cambridge Springs"). She brings this action against eleven DOC employees (collectively, "DOC Defendants")[1] and Dr. Simeon Obeng, a physician who provided medical services at SCI-Cambridge Springs. Her pro se complaint asserts claims under 42 U.S.C. § 1983 and Pennsylvania

---

[1] The DOC Defendants are Superintendent Michelle Overmeyer, Captain Eric Burns, Captain Heidi Dugan, and Corrections Officers Alfonzia Newsome, James Morris, Tanya Mayo, Ember Blinn, Kimberly Dreischalick, Stephen Haggrity, Richard Middendorf, and Kelly Claypoole.

1

State law.² The DOC Defendants have filed a motion to dismiss Shepard's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) and a supporting brief. *See* ECF Nos. 20, 21. Shepard has filed a response in opposition to the motion.³ *See* ECF No. 28. The parties have consented to the jurisdiction of a United States Magistrate Judge under 28 U.S.C. § 636. For the reasons explained below, the Court will grant the DOC Defendants' motion.

I.  Factual Allegations

The Court accepts as true the following factual allegations of Shepard's Complaint for purposes of the DOC's motion to dismiss.⁴ Shepard was scheduled to be transported to an off-site doctor's appointment in November of 2022.⁵ She waited in her cell for a call to report for transport. When no call was received, Shepard's unit officer contacted the medical department and inquired where and when Shepard should report. Shepard was told to report to the "medical building." Upon arrival at the medical building, Officer Dreischalik, the officer responsible for off-site transport, used abusive language and asked Shepard, "where the f*** have you been?" After Shepard explained that she was not permitted to leave her cell block without proper orders,

---

² Shepard's original Complaint (ECF No. 6) was stricken because it lacked a signature. See ECF No. 57. Shepard refiled a signed Complaint, which was docketed at ECF No. 62.

³ Dr. Obeng has filed a motion to dismiss or in the alternative for summary judgment. *See* ECF No. 45. That motion will be addressed in a separate Memorandum Opinion.

⁴ Shepard has filed several documents with the Court, none of which is a proper supplement or amendment to her complaint. At ECF No. 9, Shepard filed a blank "show cause" order form. At ECF No. 11, she filed a notarized affidavit stating that she has been "locked in her cell by unnamed staff and that "medical staff" have changed her medication in a life threatening manner." At ECF No. 27, she filed another notarized affidavit in which she states in a conclusory manner that she suffers from retaliation from unnamed individuals, that she has faced verbal aggression and threats, and that the "medical staff" have changed unspecified medications. ECF No. 29 is correspondence to the Court regarding access to her witness list. At ECF No. 32, she again corresponded with the court regarding her witness list and continued medical problems such as back pain and stress. At ECF No. 35, she corresponded with the Court regarding her placement in solitary confinement. Finally, at ECF No. 51, she corresponded with the Court, asking for an update on her case. Although certain of these filings refer to events after the filing of the complaint, none adequately identifies the personal involvement of any Defendant in this action.

⁵ Shepard lists the date of this appointment as November 31, 2022, but, as November has only thirty days, this date must be erroneous.

2

Dreischalik became angry and subjected Shepard to a strip search. Although Shepard acknowledges that such searches are standard procedure when inmates are transported off-site for medical appointments, she alleges that Dreischalik used abusive language during this search. No contraband was found. Shepard then dressed, was handcuffed, and escorted outside.

While walking through the rain to the transport vehicle, Shepard complained to Dreischalik that her glasses were falling off and she could not see clearly, but Dreischalik ignored these complaints. As Shepard entered the transport van, Dreischalik let go of her. She fell to the floor and sustained a laceration to her forehead. Officers summoned an emergency response team, which took Shepard back to the medical department where her wound was treated. She also alleges that she had a "visible leg injury" and was "in pain." She received several stiches and was x-rayed several days later. Shepard's doctor's appointment was rescheduled for the next month. By the time of her next appointment, Shepard was using a cane and a wheelchair as she continued to suffer wrist pain, neck pain, vision issues, and back pain. Shepard filed a grievance relating to these events and also threatened to file a lawsuit against the prison. She alleges that the staff subjected her to "retaliatory treatment," "including being written up approximately five (5) times," after she filed her grievance.

II.  Claims

Shepard broadly alleges that the Defendants violated her First Amendment rights to free speech, to access to courts, to petition the government for redress, and to be free from retaliation for engaging in protected conduct, her Fourteenth Amendment right to due process, her Fourth Amendment right to be free from unreasonable search, and her Eighth Amendment right to be free from deliberate indifference to her medical needs. *See* ECF No. 62, p. 4. Shepard's Complaint is comprised of the pre-printed "Pro Se 14 (Rev. 2016) Complaint for Violation of Civil Rights

(Prisoner)" form and several supplemental pages. Her supplemental pages do not state her claims in separately numbered paragraphs as required by Federal Rule of Civil Procedure 10, and her pleading overall does not present "a short and plain statement" of her claims as required by Federal Rule of Civil Procedure 8(a). The Complaint does not identify her claims by count, and it is frequently difficult to determine against which Defendants its factual allegations and claims are asserted. The Complaint includes many conclusions of law and proposed inferences that are unsupported by factual allegations. Despite these deficiencies, the Court has liberally construed the factual allegations of the Complaint as raising the following claims against the DOC Defendants:

| Claim | Against DOC Defendants | Reference Page(s) |
|---|---|---|
| 1st Amendment Retaliation | Overmeyer, Claypoole, Morris, Haggrity, Newsome, Mayo, Middendorf, Blinn, Burns, Dugan, | ECF No. 6, p. 17 |
| 1st Amendment Access-to-Courts[6] | Overmeyer, Dugan | ECF No. 6, p. 17 |
| 8th Amendment Deliberate Indifference Claim-Medical Needs | Dreischalick | ECF No. 6, p.16-17, 21 |
| 14th Amendment Procedural Due Process | Overmeyer, Dugan | ECF No. 6, p. 17 |
| 4th Amendment Illegal Search | Dreischalick, Blinn | ECF No. 6, p. 17 |
| State Law Negligence | Dreischalick | ECF No. 6, p.16 |

---

[6] The Complaint vaguely references First Amendment "freedom of speech" and "right to petition" claims against Overmeyer. *See* ECF No. 62, p. 17. These references appear to entirely overlap Shepard's First Amendment retaliation and access-to-courts claims. Accordingly, the Court does not construe these references as separate claims. In any event, Shepard invokes these terms without supporting factual allegations. Accordingly, to the extent she intended to assert First Amendment "freedom of speech" and "right to petition" claims against any Defendant, those claims will be dismissed without prejudice and with leave to file an amended complaint, provided Shepard is able to allege facts to support them.

4

Shepard asserts her claims against all Defendants in their individual and official capacities and seeks money damages and injunctive relief in the form of a transfer to another institution.[7] *Id.*, p. 6.

III.  Standard of Review

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. *See Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). In deciding a Rule 12(b)(6) motion to dismiss, the court must accept as true all factual allegations of the complaint and view them in a light most favorable to the plaintiff. *See U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002). In making its determination under Rule 12(b)(6), the court is not opining on whether the plaintiff is likely to prevail on the merits; the plaintiff must only present factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-36 (3d ed. 2004)). *See also Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Furthermore, a complaint should only be dismissed pursuant to Rule 12(b)(6) if it fails to allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

While a complaint does not require detailed factual allegations to survive a motion to dismiss, it must provide more than labels and conclusions. *See Twombly*, 550 U.S. at 555. A "formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*,

---

[7] It is unclear from Shepard's Complaint precisely what relief she is seeking against the Defendants in their individual capacities and which relief she is seeking against them in their official capacities. To the extent Shepard seeks money damages against the Defendants in their official capacities, her claim is barred by Eleventh Amendment immunity. *See Caesar v. Kemp*, 2024 WL 842169, at *4 (W.D. Pa. Jan. 29, 2024), *report and recommendation adopted*, 2024 WL 839061 (W.D. Pa. Feb. 27, 2024). Injunctive relief is available against the Defendants in their official capacities as Eleventh Amendment immunity does not extend to claims for prospective equitable relief. *Ex Parte Young*, 209 U.S. 123, 129 (1908). Money damages are an available remedy to the extent Shepard seeks such damages against the Defendants in their individual capacities. *See Caesar*, 2024 WL 842169, at *4.

478 U.S. 265, 286 (1986)). Moreover, a court need not accept inferences drawn by a plaintiff if they are unsupported by the facts alleged in the complaint. *See California Pub. Emp. Ret. Sys. v. The Chubb Corp.*, 394 F.3d 126, 143 (3d Cir. 2004) (citing *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997)). Nor must the court accept legal conclusions disguised as factual allegations. *See Twombly*, 550 U.S. at 555; *McTernan v. City of York, Pennsylvania*, 577 F.3d 521, 531 (3d Cir. 2009) ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

Finally, because Shepard is proceeding pro se, her complaint will be held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520-521 (1972). If the court can reasonably read his pro se pleading to state a valid claim upon which relief can be granted, it will do so despite his failure to cite proper legal authority, confusion of legal theories, poor syntax, and sentence construction, or unfamiliarity with pleading requirements. *See Boag v. MacDougall*, 454 U.S. 364 (1982); *United States ex rel. Montgomery v. Bierley*, 141 F.2d 552, 555 (3d Cir. 1969) (petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance").

IV. Discussion

The DOC Defendants' motion to dismiss is limited in scope. They seek dismissal of the following claims: (1) Shepard's First Amendment retaliation claim against Defendants Overmeyer, Burns, Dugan, and Blinn; (2) her access-to-courts claim against all DOC Defendants; (3) her Fourteenth Amendment due process claim against all DOC Defendants; and (4) her Fourth Amendment claim. *See* ECF No. 21, pp. 3-11.

      A.      Shepard's First Amendment retaliation claim against Defendants Overmeyer, Burns, Dugan, and Blinn will be dismissed.[8]

Defendants Overmeyer, Burns, Dugan, and Blinn challenge the sufficiency of the Complaint to support Shepard's' First Amendment retaliation claim against them. *See* ECF No. 21, p. 3. To state a First Amendment retaliation claim, a plaintiff must allege facts to support that (1) he engaged in constitutionally protected activity, (2) the defendant took or cause an adverse action against him that was sufficient to deter a person of ordinary firmness from engaging in further protected conduct, and (3) the existence of a causal link between the protected conduct and the adverse action. *Thomas v. Indep. Twp.*, 463 F.3d 285, 296 (3d Cir. 2006). The causal link element requires allegations of fact to support that the prisoner's protected conduct was a "substantial and motivating factor" for the adverse action. *See Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001). Absent direct evidence of retaliatory intent, a causal link can be shown through "an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or ... a pattern of antagonism coupled with timing that suggests a causal link." *Watson v. Rozum*, 834 F.3d 417, 422 (3d Cir. 2016). The allegations of fact upon which Shepard bases her retaliation claim are unfocused and sparse. She generally alleges that "[s]taff began retaliatory behaviors, and intimidation tactics once [she] expressed that she was going to file a lawsuit against the prison." ECF No. 62, p. 15. But as set forth below, her factual allegations fail to support such an inference against any of these four Defendants.

---

[8] The DOC Defendants have not moved to dismiss Shepard's retaliation claims against Defendants Claypoole, Morris, Haggrity, Newsome, Mayo, and Middendorf. Shepard alleges that each of these DOC Defendants submitted frivolous misconduct charges against her in retaliation for her having filed a grievance concerning the November 2022 incident.

1. Defendant Overmeyer

As to Overmeyer, the Complaint alleges that she "directly participated in this violation as well she has also made clear that she is aware of other staff within Cambridge Springs retaliatory treatment of the Plaintiff when she made the statement that plaintiff would not be in the Restrictive Housing Unit (RHU) if she had not been 'boasting' about filing a lawsuit against the prison." *Id.* Later, Shepard alleges that Overmeyer engaged in "retaliatory behavior, and intimidation tactics in an attempt to discourage and/or prevent Plaintiff from having the proper access to the courts to file anything against the prison" and that Overmeyer "made sure plaintiff was in the RHU as a form of punishment for exercising her right to petition the [government] for redress." *Id.*, p. 17.

These allegations are far too conclusory to support a retaliation claim against Overmeyer. In a § 1983 action, the plaintiff must allege facts to demonstrate each defendant's personal involvement in the underlying constitutional violation. *See Victor v. Little*, 2024 WL 4228145, at *4 (E.D. Pa. Sept. 18, 2024). To satisfy this pleading burden, Shepard must allege facts to support that Overmeyer either "participated in violating the [her] rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct," *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004), or, alternatively, that she, "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *Luzerne County*, 372 F.3d at 586. The Complaint fails to support any theory of supervisory liability against Overmeyer. It does not allege facts to support that Overmeyer caused Shepard to be placed in the RHU or was otherwise involved in that placement. Shepard's allegation that Overmeyer "[made] sure [Shepard] was in the RHU" is purely conclusory and unsupported by factual allegations. Her allegation that Overmeyer stated that she would not be in the RHU if she had not boasted about

suing prison personnel implicitly concedes that Shepard was already in the RHU when Overmeyer made this statement, and without factual allegations regarding the circumstances of her placement in the RHU and Overmeyer's knowledge of those circumstances, it is insufficient to support a plausible inference that Overmeyer acquiesced in any subordinate's misconduct.

    2.    Defendant Blinn

The retaliation claim against Blinn is even more bereft of factual support. Shepard's claim appears to be based on Blinn conducting an "investigative search, [a] search under false pretenses, [and] 4th amd. search and sezure [sic]." *Id.* The complaint does not identify the date or circumstances of the search or seizure in question. The complaint includes no other allegations against Blinn. Shepard's vague allegation regarding a search and seizure fails to support any of the elements of a retaliation claim against Blinn or Blinn's personal involvement in any other actionable conduct.

    3.    Defendants Burns and Dugan

The retaliation claim against Burns and Dugan relates to a Prison Rape Elimination Act ("PREA")[9] complaint Shepard submitted against Burns. Shepard alleges that at an "unknown time" on January 31, 2023, she was seated in her wheelchair, when Burns put a "coat over her" and then "proceeded to hit [her] on the back and then ran his hand down her back and up under her with an open palm as he 'tucked' her coat beneath her." ECF No. 62, pp. 18, 22. Sheppard states that this interaction prompted her to file a PREA complaint because she felt "unsafe, … violated and fearful." *Id.* p. 22. Regarding Dugan, Shepard alleges that she provided "no

---

[9] *See* 34 U.S.C. §§ 30301 *et seq*. The "PREA does not create a private cause of action." *Walsh v. N.J. Dep't of Corr.*, 2017 WL 3835666, at *4 (D.N.J. Aug. 31, 2017). "While the PREA was intended in part to 'increase the accountability of prison officials' and to 'protect the Eighth Amendment rights of Federal, State, and local prisoners,' nothing in the language of the statute establishes a private right of action." *Id.* (quoting *Amaya v. Butler*, 2017 WL 2255607, at *5 (S.D. Ill. May 23, 2017) (quoting 42 U.S.C. § 15602)).

information" to Shepard after she requested "the information necessary to file a complaint and seek redress." *Id.*, p. 18. Shepard also alleges that Dugan retaliated against her by improperly investigating and dismissing her PREA complaint against Burns based on Dugan's "personal feelings." *Id.*

Shepard's allegations do not support a retaliation claim against Burns. Although Shepard's filing of a PREA complaint is protected conduct, she does not allege that Burns took any adverse action against her after this protected conduct. *See, e.g., Reed v. Garcia*, 2024 WL 2901945, at *7 (M.D. Pa. June 10, 2024) (no retaliation claim stated where plaintiff failed to allege that the subject of the PREA complaint took any retaliatory action). The conduct that prompted Shepard to file the PREA complaint predates her protected conduct and, therefore, cannot satisfy the adverse action or causation elements of her retaliation claim. Her conclusory allegation that Burns' alleged actions on January 31, 2023 were retaliatory, *see* ECF No. 62, p. 17, does not support a claim absent allegations of fact to show that these actions occurred after Shepard's protected conduct and was motivated by that conduct. She has not alleged facts to support that she engaged in protected conduct prior to Burns' alleged action and that such prior protected conduct motivated Burns' alleged actions.

Shepard's Complaint also fails to state a retaliation claim against Dugan. Shepard alleges only that Dugan dismissed her PREA complaint on the merits based on "personal feelings" for Burns. In other words, she believes Dugan had a bias that favored Burns. This allegation does not support an inference that Dugan took any action against Shepard based on Shepard's protected conduct. Favoritism or bias alone is not evidence of a retaliatory motive. In addition, Shepard's allegation of bias itself is conclusory and unsupported by factual allegations.

B.  The Access-to-Courts Claim against the DOC Defendants will be dismissed.

Although the DOC Defendants move to dismiss Shepard's access-to-courts claim against all DOC Defendants, the Court reads the complaint as asserting this claim only against Overmeyer and Dugan. *See* ECF No. 62, p. 5. "Under the First and Fourteenth Amendments, prisoners retain a right of access to the courts." *Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir. 2008). "Where prisoners assert that defendants' actions have inhibited their opportunity to present a past legal claim, they must show (1) that they suffered an 'actual injury'—that they lost a chance to pursue a 'nonfrivolous' or 'arguable' underlying claim; and (2) that they have no other 'remedy that may be awarded as recompense' for the lost claim other than in the present denial of access suit." *Id.* (quoting *Christopher v. Harbury*, 536 U.S. 403, 415, (2002)). "[T]he underlying cause of action . . . is an element that must be described in the complaint." *Macon v. Gressel*, 2024 WL 3497434, at *14 (W.D. Pa. July 22, 2024) (citation omitted).

Shepard's claim fails because she does not allege facts to support that any Defendant prevented her from pursuing a prior meritorious claim. Her current lawsuit cannot support the elements of her cause of action because a viable access-to-courts claim assumes "the prior loss of a meritorious claim, not an alleged impairment of one that the plaintiff is actively pursuing." *Green v. Ferdarko*, 2017 WL 9285187, at *12 (W.D. Pa. Dec. 6, 2017), *report and recommendation adopted*, 2018 WL 2009087 (W.D. Pa. Apr. 30, 2018). Shepard has not identified any meritorious claim that she has lost due to any conduct by any DOC Defendants.

C.  The Due Process Claim against the DOC Defendants will be dismissed.

Shepard's Complaint appears to assert a Fourteenth Amendment procedural due process claim against Overmeyer and Dugan based on her placement in the RHU and her allegations of an inadequate or biased PREA investigation. *See* ECF No. 21, p. 7. To state a Fourteenth Amendment

procedural due process claim, a plaintiff must allege facts to demonstrate that she was deprived of a liberty or property interest protected by the Fourteenth Amendment without "due process of law." *Hill v. Borough of Kutztown*, 455 F.3d 225, 233-34 (3d Cir. 2006). If the plaintiff successfully demonstrates a protected liberty or property interest, the focus in the procedural due process analysis shifts to "the adequacy of the remedial procedure" rather than to "the government's actual actions that allegedly deprived the individual of his liberty or property interest." *Giuliani v. Springfield Twp.*, 726 Fed. Appx. 118, 122 (3d Cir. 2018) (quoting *K.S.S. v. Montgomery Cnty. Bd. of Comm'rs*, 871 F. Supp. 2d 389, 397-98 (E.D. Pa. 2012)). "[A] state provides constitutionally adequate procedural due process when it provides reasonable remedies to rectify a legal error by a local administrative body." *Id.* (internal quotation marks and citation omitted).

Shepard's Complaint fails to state a due process claim against Overmeyer because it does not allege facts to support that Overmeyer's actions deprived her of any interest protected by the Fourteenth Amendment. Shepard's claim against Overmeyer is apparently based on her being placed in the RHU following one or more misconduct reports. The Complaint, however, does not allege facts to support that her time in the RHU involved a duration or conditions sufficient to implicate a liberty interest entitling her to due process protections. *See Torres v. Fauver*, 292 F.3d 141, 151-52 (3d Cir. 2002) (holding that disciplinary detention for fifteen days and administrative segregation for 120 days did not implicate a protected liberty interest "[b]ecause disciplinary detention and administrative segregation [are] the sort[s] of confinement that inmates should reasonably anticipate receiving at some point in their incarceration, [and thus a plaintiff's] transfer to less amenable and more restrictive quarters [does] not implicate a liberty interest protected by the Due Process Clause"); *Griffin v. Vaughn*, 112 F.3d 703 (3d Cir. 1997) (holding that an inmate

placed in administrative segregation for 15 months without hearing was deprived of no interest protected by Due Process Clause); *see also Fraise v. Terhune*, 283 F.3d 506, 522 (3d Cir. 2002) (stating that inmates transferred to a particular management unit "were not subjected to confinement that exceeded the sentences imposed upon them or that otherwise violated the Constitution, and therefore no liberty interest created by the Due Process Clause itself was impinged"). In addition to this fundamental defect, the Complaint also fails to allege facts sufficient to support that Overmeyer was personally involved in Shepard's placement in the RHU. Her only factual allegation is that Overmeyer commented on her placement after it occurred. *See* ECF No. 62, p. 16. All other allegations regarding Overmeyer are purely conclusory.

Shepard's only allegations against Dugan relate to her investigation and dismissal of Shepard's PREA complaint against Burns. Shepard alleges that she made "verbal requests" to staff for "information to file a complaint" and that Dugan "responded giving no information." ECF No. 62, p. 18. She claims Dugan violated her due process rights by "improperly investigating and dismissing [her] PREA complaint because of her personal feelings." *Id.*, p. 17. These allegations support neither a protected liberty or property interest nor any defect in the PREA investigation or resolution process that caused it to fall below constitutional standards. Shepard's dissatisfaction with the outcome of her PREA complaint, standing alone, does not support a due process claim. Nor does her unsupported allegation that Dugan was biased in the resolution of her PREA complaint.[10]

---

[10] To the extent Shepard may have intended to raise a substantive due process claim against Overmeyer or Dugan, it also fails. "Substantive due process 'prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty.'" *United States v. Salerno*, 481 U.S. 739, 746 (1987)). "Conduct shocks the conscience if it 'violates the decencies of civilized conduct.'" *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846–47 (1998)). Shepard's allegation that Dugan dismissed her PREA complaint based on her "personal feelings" is vague and conclusory and falls well short of supporting a finding of conscious-shocking behavior. The same also applies to her allegation concerning Overmeyer's comment about her placement in the RHU.

D.  The Fourth Amendment Claim against Defendant Dreischalik and Blinn will be dismissed.

Shepard also claims that the strip search conducted by Dreischalik on the day of Shepard's doctor's appointment violated her Fourth Amendment rights. *See* ECF No. 62, p. 15. Shepard acknowledges that such searches are routinely performed before an inmate is transported off-site for an appointment. *See* ECF No. 62, p. 16. Nevertheless, Shepard asserts that the search violated her Fourth Amendment rights because of the "manner in which it was conducted," specifically referencing Dreischalik's having ordered her to "squat, cough, expose" her body cavities in a "degrading and humiliating fashion." *Id.* p. 16. She characterizes her conduct as "unprofessional" and "gross mistreatment." *Id.*, pp. 16-17.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons ... against unreasonable searches and seizures." U.S. Const. amend. IV. Inmates do not have a Fourth Amendment right to be free of strip searches under all circumstances. *See Bell v. Wolfish*, 441 U.S. 520 (1979). Although strip searches constitute a "significant intrusion on an individual's privacy," *United States v. Whitted*, 541 F.3d 480, 486 (3d Cir. 2008), they are lawful where they are "reasonably related to legitimate security interests," a determination that is generally within "the province and professional expertise of corrections officials." *Florence v. Bd. of Chosen Freeholders of Cnty. of Burlington*, 566 U.S. 318, 328 (2012).

When determining the reasonableness of a strip search, courts must balance "the need for the particular search against the invasion of personal rights that the search entails" and consider "the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Bell*, 441 U.S. at 558–59 (holding that the prison's policy of strip and visual body cavity searches, requiring inmates to stand naked, lift their genitals and bend over and spread their buttocks for visual inspection, did not violate an inmate's

Fourth Amendment rights); *see also Brown v. Blaine*, 185 Fed. Appx 166, 169–70 (3d Cir. 2006) (finding no constitutional violation where inmate had to lift his genitals, spread his buttocks, and then place his hands on his head and sweep his mouth with his fingers). The Supreme Court has also held that a full strip search of an individual detained in the general prison population is constitutionally permissible whatever may be the basis for reasonable suspicion that the individual may be concealing something. *See Florence*, 566 U.S. at 328 (explaining that "correctional officials must be permitted to devise reasonable search policies to detect and deter the possession of contraband in their facilities"); *see also Small v. Wetzel*, 528 Fed. Appx. 202, 207 (3d Cir. 2013) (holding that it is constitutional to conduct a full strip search of an inmate in general population, "regardless of the reason for detention or the existence of reasonable suspicion that the individual is concealing something") (citing *Florence*, 566 U.S. 318). And courts have recognized the reasonableness and legality of "strip searches for the security and good order of the facility prior to an inmate's transport outside the secure perimeter of the prison." *Robins v. C.O. True*, 2015 WL 1219278, at *11 (M.D. Pa. Mar. 13, 2015) (citing DC-ADM 203(G)(2)(a)(9). Nor is it a per se violation of a plaintiff's constitutional rights when a strip search includes a visual body cavity search conducted in the presence of other inmates. *See Illes v. Beard*, 2013 WL 2285565, at *5 (M.D. Pa. May 23, 2013); *Eby v. Karnes*, 2020 WL 1550634 (M.D. Pa. Apr. 1, 2020) (no constitutional violation where the search was performed in front of other inmates and included a visual cavity search).

Shepard has failed to allege facts to support that the November 2022 search was unreasonable. She acknowledges that such searches are routinely conducted before an inmate leaves the correctional institution for outside medical appointments. Searches under such circumstances do not violate the Fourth Amendment. *See Johnson v. Padin,* 2020 WL 4818363,

at *5 (D. Conn. Aug. 16, 2020). And Shepard's allegations demonstrate only that Dreischalik was giving her instructions during the search as part of her inspection. Although Dreischalik's alleged language may have been coarse, her comments were not so derogatory, unprofessional, or vulgar as to raise constitutional issues. Furthermore, because the strip search was not unreasonable, any Fourth Amendment claim Shepard may be asserting against Blinn also fails. Indeed, the Complaint does not allege that Blinn had any personal involvement in the November strip search or any other search. Indeed, the complaint includes no allegations against Blinn beyond the conclusory allegation that she violated Shepard's constitutional rights. *See* ECF No. 62, p. 17.

V.  Conclusion

For the foregoing reasons, the DOC Defendants' motion to dismiss will be granted and the following claims will be dismissed: (1) Shepard's First Amendment retaliation claim against Overmeyer, Burns, Dugan, and Blinn, (2) Shepard's access-to-courts claim, (3) Shepard's Fourteenth Amendment due process claim, and (4) Shepard's Fourth Amendment claim. In addition, to the extent that Shepard intended to assert a "freedom of speech" or a "right to petition" claim independent of her retaliation and access-to-courts claim, those claims also will be dismissed. Because the Court cannot say as a matter of law that Shepard cannot cure the factual deficiencies in the foregoing claims by amendment, each of these claims will be dismissed without prejudice and with leave to file an amended complaint.

The following claims are unaffected by the disposition of the DOC Defendants' motion: (1) Shepard's negligence claim against Dreischalik, (2) her First Amendment retaliation claim against Claypoole, Morris, Haggrity, Newsome, Mayo, and Middendorf, (3) her Eighth Amendment deliberate indifference to medical needs claim against Dreischalik, and (4) her claims against Dr. Obeng that will be address separately.

An order will issue separately.

DATED this 5th day of November 2024.

BY THE COURT:

/s/ Richard A. Lanzillo
RICHARD A. LANZILLO
CHIEF UNITED STATES MAGISTRATE JUDGE