IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
ERIE DIVISION

| | | |
|---|---|---|
| LORETTA SHEPARD, | ) | |
| | ) | |
| Plaintiff | ) | 1:23-CV-00268-RAL |
| | ) | |
| vs. | ) | RICHARD A. LANZILLO |
| | ) | Chief United States Magistrate Judge |
| MICHELLE OVERMEYER, CAMBRIDGE | ) | |
| SPRINGS SUPERINTENDENT; | ) | |
| KIMBERLY DREISCHALICK, | ) | IN RE: ECF NO. 85 |
| CORRECTIONS OFFICER; KELLY | ) | |
| CLAYPOOLE, CORRECTIONS OFFICER; | ) | MEMORANDUM OPINION ON DOC |
| JAMES MORRIS, CORRECTIONS | ) | DEFENDANTS' MOTION TO DISMISS |
| OFFICER; STEPHEN HAGGRITY, | ) | |
| CORRECTIONS OFFICER; ALFONZIA | ) | |
| NEWSOME, CORRECTIONS OFFICER; | ) | |
| TANYA MAYO, CORRECTIONS | ) | |
| OFFICER; RICHARD MIDDENDORF, | ) | |
| CORRECTIONS OFFICER; EMBER | ) | |
| BLINN, CORRECTIONS OFFICER; | ) | |
| CAPTAIN ERIC BURNS, HEIDI DUGAN, | ) | |
| ACTING CAPTAIN OF THE SECURITY | ) | |
| OFFICE, | ) | |
| | ) | |
| Defendants | ) | |

The Department of Corrections Defendants ("DOC Defendants")[1] have moved to dismiss Plaintiff Loretta Shepard's Amended Complaint. For the reasons explained herein, the Court will grant the DOC Defendants' motion.[2]

---

[1] The DOC Defendants are Superintendent Michelle Overmeyer, Captain Eric Burns, Captain Heidi Dugan, and Corrections Officers Alfonzia Newsome, James Morris, Tanya Mayo, Ember Blinn, Kimberly Dreischalick, Stephen Haggrity, Richard Middendorf, and Kelly Claypoole.

[2] The parties have consented to the jurisdiction of a United States Magistrate Judge, including the entry of final judgment, as authorized by 28 U.S.C. §636(c).

I.    Relevant Procedural History

Shepard commenced this action against the eleven DOC Defendants and Dr. Simeon Obeng, a physician who provided medical services at SCI-Cambridge Springs ("SCI-Cambridge Springs") where she is incarcerated.  Her pro se complaint asserted claims under 42 U.S.C. § 1983 and Pennsylvania law.  The Court granted Defendant Obeng's motion for summary judgment based on Shepard's failure to exhaust her administrative remedies as to her claims against him. *See* ECF Nos. 65 (Memorandum Opinion), 66 (Judgment Order).  By separate order, the Court also granted the DOC Defendants' motion to dismiss Shepard's claims against them, but the Court dismissed these claims without prejudice and with leave to amend.[3]  *See* ECF Nos. 63 (Memorandum Opinion), 64 (Order).  As authorized by the Court, Shepard filed an Amended Complaint.  *See* ECF No. 82.

II.   Material Facts and Claims[4]

The factual allegations of Shepard's Amended Complaint are accepted as true for purpose of the DOC Defendants' motion to dismiss, but her conclusory allegations that are unsupported by facts will be disregarded.

On or about November 30, 2022, Shepard sustained injuries while boarding a medical transport van that was to transport her from SCI–Cambridge Springs to a medical appointment.  It

---

[3] Specifically, the Court found Shepard's conclusory allegations failed to support to her (1) First Amendment retaliation claim against DOC Defendants Overmeyer, Burns, Dugan and Blinn, (2) access-to-courts claim, (3) Fourteenth Amendment due process claim, and (4) Fourth Amendment claim. To the extent Shepard also intended to assert a "freedom of speech" or a "right to petition" claim independent of her retaliation and access-to-courts claim, the Court also dismissed these claims without prejudice based on the absence of factual allegations to support them.

[4] Rather than presenting Shepard's factual allegations in separately numbered paragraphs as Rule 10(b) of the Federal Rules of Civil Procedure requires, the Amended Complaint is a narrative. Rule 10(b) specifically requires that a party "state its claims … in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b).  "Rule 10(b) ensures that a plaintiff breaks his or her complaint down into a series of discrete factual allegations, which the defendant must, in turn, admit or deny." *Acon-Chen v. Buttigieg*, 2024 WL 4416943, at *2 (D.D.C. Oct. 5, 2024).  "When a plaintiff fails to comply with Rule 10(b), and instead combines his or her allegations in single, running narrative, the defendant is left at a loss with respect to how to answer." (citations omitted). Rule 10(b) also requires that "each claim founded on a separate transaction or occurrence…must be stated in a separate

was raining at the time and Shepard was wearing glasses, handcuffed in front of her body, and shackled at the ankles. As she approached the van, heavy rain obscured her vision through her glasses and she commented to Defendant Kimberly Dreischalick, a guard, that she could not see. Dreischalick stated that she would guide Shepard. As Shepard attempted to step into the van, she tripped and fell, resulting in injuries to forehead, neck, wrist, and left leg. Shepard faults Defendant Dreischalick for failing to provide adequate assistance to Shepard as she attempted to enter the van. Shepard further alleges that correctional staff retaliated against her for filing grievances and complaints, including at least one made pursuant to the Prison Rape Elimination Act ("PREA").

Shepard's Amended Complaint continues to assert claims against all eleven DOC Defendants and seeks compensatory damages and a transfer to another correctional institution. *Id.* p. 11. Having carefully reviewed Shepard's factual allegations and liberally construed her pleading, the Court has identified the following claims: (1) a First Amendment retaliation claim; (2) a Fourteenth Amendment due process claim; (3) an Eighth Amendment "conditions of confinement"/cruel and unusual punishment claim; and (4) a negligence claim under Pennsylvania state law. The Amended Complaint appears to abandon the "access-to-courts" claim raised in Shepard's original Complaint.

In support of their motion to dismiss, the DOC Defendants argue: (1) all claims for monetary damages against them in their official capacities are barred by the Eleventh Amendment; (2) the Amended Complaint fails to allege facts to support the personal involvement of DOC Defendants Claypoole, Morris, Haggrity, Mayo, Middendorf, and Blinn; and (3) the Amended

---

count" if "doing so would promote clarity." *Id.* Shepard's Amended Complaint also does not present her claims in separate counts. Consequently, her claims and their supporting allegations are again a challenge to identify. Nevertheless, because Shepard is proceeding pro se, the Court is obliged to identify any claims plausibly supported by the Amended Complaint's factual allegations whether Shepard has identified them. *See, e. g., Williams v. Nyberg*, 2021 WL 7501828, p. 1 (W.D. Pa. Oct. 19, 2021).

Complaint fails to allege facts sufficient to support Shepard's First Amendment retaliation claim, her Fourteenth Amendment due process claim, or her Eighth Amendment cruel and unusual punishment claim. The DOC Defendants' motion has been fully briefed, and the Court will consider each of their arguments in turn.

III.    Standard of Review

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the allegations in the complaint. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

The Court must accept all factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff. *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008). However, the Court is not required to accept "unsupported conclusions and unwarranted inferences," *Schuylkill Energy Res., Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997), or "legal conclusions couched as factual allegations." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

Finally, because Shepard is proceeding pro se, her complaint will be held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). If the Court can reasonably read her pro se pleading to state a valid claim upon which relief can be granted, it will do so despite Shepard's failure to cite proper legal authority, confusion of legal theories, poor syntax, and sentence construction, or unfamiliarity with pleading

requirements. *See Boag v. MacDougall*, 454 U.S. 364 (1982); *United States ex rel. Montgomery v. Bierley*, 141 F.2d 553, 555 (3d Cir. 1969).

IV.    Discussion and Analysis

    A. All claims against the DOC Defendants in their official capacities will be dismissed with prejudice.

The Amended Complaint asserts constitutional claims pursuant to 42 U.S.C. § 1983. It demands monetary and non-monetary relief from the DOC Defendants but does not specify whether Shepard is bringing her claims against them in their official capacities, individual capacities, or both. *See* ECF No. 82, *generally*. Raising Eleventh Amendment immunity, the DOC Defendants seek dismissal of any claims against them in their official capacities. *See* ECF No. 86, p. 6. The Court will grant their motion as to any such claims.

As a threshold matter, the DOC Defendants acting in their official capacities, are not "persons" as that term is used in § 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("[N]either a State nor its officials acting in their official capacities are 'persons' under [Section] 1983."). Consequently, Shepard cannot maintain a § 1983 claim for money damages against any DOC Defendant in his or her official capacity.

Furthermore, Shepard's § 1983 official-capacity claims are barred by the Eleventh Amendment, which provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. This Amendment

        has been interpreted to render states—and, by extension, state agencies and departments and officials when the state is the real party in interest—generally immune from suit by private parties in federal court. Indeed, it has been recognized for over two hundred years that a state's immunity from suit in federal court is a

> fundamental principle of our constitutional structure that preserves,
> as intended by the Framers, the respect and dignity of the states and
> protects the ability of the states "to govern in accordance with the
> will of their citizens."

*Pa. Fed'n of Sportsmen's Clubs, Inc. v. Hess*, 297 F.3d 310, 323 (3d Cir. 2002) (quoting *Alden v. Maine*, 527 U.S. 706, 751 (1999)). *See also Godfrey v. Little*, 2025 WL 2792250, at *11 (M.D. Pa. Sept. 30, 2025).

Eleventh Amendment immunity extends to all state agencies, departments, and entities "having no existence apart from the state." *Laskaris v. Thornburgh*, 661 F.2d 23, 25 (3d Cir. 1981) (citation omitted). The DOC, as an agency of the Commonwealth of Pennsylvania, is entitled to the Commonwealth's Eleventh Amendment immunity. *See* 71 P.S. § 61(a) ("The executive and administrative work of this Commonwealth shall be performed by the ... Department of Corrections ...."); *Lavia v. Pa., Dep't of Corr.*, 224 F.3d 190, 195 (3d Cir. 2000) (stating that "[b]ecause the Commonwealth of Pennsylvania's Department of Corrections is a part of the executive department of the Commonwealth, it shares in the Commonwealth's Eleventh Amendment immunity"); *see also Downey v. Pa. Dep't of Corr.*, 968 F.3d 299, 310 (3d Cir. 2020) (explaining that "state sovereign immunity prohibit[ed]" plaintiff's Section 1983 claims against the DOC).

The DOC Defendants are state officials for purposes of § 1983. A suit for monetary damages against a state official in his official capacity "is not a suit against that official but rather is a suit against that official's office. As such, it is no different from a suit against the State itself." *Will*, 491 U.S. at 71 (internal citation omitted); *see also Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985) ("Official-capacity suits ... 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" (quoting *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S 658, 690 n.55 (1978))). Therefore, to the extent Shepard's Amended Complaint

asserts official-capacity claims for monetary damages against the DOC Defendants, they are the equivalent of claims against the Commonwealth and will be dismissed, with prejudice. *See Will*, 491 U.S. at 66, 70–71.[5]

      B.   All claims against DOC Defendants Kelly Claypoole, James Morris, Stephen Haggrity, Tanya Mayo, and Richard Middendorf will be dismissed because the Amended Complaint fails to allege facts to support their personal involvement in any actionable conduct.

It is not entirely clear what claims Shepard is asserting against DOC Defendants Claypoole, Morris, Haggrity, Mayo, and Middendorf. She expressly includes them as defendants to her First Amendment retaliation claim as she alleges that each was "involved in Retaliatory [sic] behavior in the form of vulgar language, frivolous misconducts, and destroying/damaging property." *Id*. But the Amended Complaint alleges no facts to support such a finding against any of these DOC Defendants, or any factual basis for any other claim against them.

A plaintiff pursuing a claim under 42 U.S.C. § 1983, must allege facts to support that the defendant, acting under color of state law, deprived the plaintiff of a right secured by the Constitution or laws of the United States. *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995). "The first step in evaluating a section 1983 claim is to 'identify the exact contours of the underlying right said to have been violated' and to determine 'whether the plaintiff has alleged

---

[5] There are, however, two narrow circumstances where Eleventh Amendment immunity is waived or abrogated. They are where (1) the state waives its immunity or (2) Congress exercised its power under Section 5 of the Fourteenth Amendment to override that immunity. *See Graham*, 473 U.S. at 169 ("[A]bsent waiver by the State or valid congressional override, the Eleventh Amendment bars a damages action against a State in federal court."). Neither circumstance exists here because the Commonwealth of Pennsylvania has not waived its Eleventh Amendment immunity. *See* 42 Pa. C.S. § 8521(b) ("Nothing contained in this subchapter shall be construed to waive the immunity of the Commonwealth from suit in Federal courts guaranteed by the Eleventh Amendment to the Constitution of the United States."). And Congress did not intend to abrogate a state's Eleventh's Amendment immunity by enacting § 1983. *See Quern v. Jordan*, 440 U.S. 332, 344–45 (1979) (stating that "§ 1983 does not explicitly and by clear language indicate on its face an intent to sweep away the immunity of the States; nor does it have a history which focuses directly on the question of state liability and which shows that Congress considered and firmly decided to abrogate the Eleventh Amendment immunity of States"). In addition, the Eleventh Amendment does not bar a "suit[ ] against state officers for prospective relief to end an ongoing violation of federal law." *MCI Telecomm. Corp. v. Bell Atl. Pa.*, 271 F.3d 491, 503 (3d Cir. 2001). Here, Shepard's Amended Complaint does not request injunctive or other prospective relief.

a deprivation of a constitutional right at all.'" *Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir.2000) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 841 n. 5 (1998)). "Next, a plaintiff must demonstrate a defendant's 'personal involvement in the alleged wrongs.'" *Chavarriaga v. New Jersey Dep't of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir.1988)). The "personal involvement" requirement applies to each defendant and demands that the plaintiff demonstrate that each defendant played an "affirmative part" in the violation of her constitutional rights. *Ashcroft v. Iqbal*, 556 U.S. 667, 677 (2009) ("In a § 1983 suit ..., each Government official, his or her title notwithstanding, is only liable for his or her own misconduct.").

Rather than alleging facts to support the personal involvement of Defendants Claypoole, Morris, Haggrity, Mayo, and Middendorf, the Amended Complaint relies on conclusory allegations of "intimidation and retaliation" committed by "DOC Staff" as a group. *See* ECF No. 82, p. 6. She complains of this group's use of "vulgar language," the filing of "frivolous misconducts," and destruction of her personal property. *Id.* p. 7. But she does not allege facts to support a finding that any of the named DOC Defendants engaged in any specific instance of the conduct she broadly asserts against them as a group. The Amended Complaint is also devoid of facts relating to when any such conduct occurred, or relevant circumstances surrounding the conduct. Attributing "retaliation," "intimidation," "vulgar language," and "frivolous misconducts" to "DOC Staff" and "Defendants," *id.* pp. 6-7, is insufficient to support the personal involvement of any DOC Defendant. *See Lawal v. McDonald*, 546 Fed. Appx 107, 113-14 (3d Cir. 2014) (pleading that relied on "repeated and collective use of the word 'Defendants'" did not reasonably identify the role of any defendant in the events giving rise to plaintiff's claims); *Newton v. Philadelphia Indus. Corr. Ctr.*, 2025 WL 992686, at *4 (E.D. Pa. Apr. 2, 2025) (allegations

must be reasonably attributed to each defendant to establish personal involvement). Because the Amended Complaint fails to support the personal involvement of Defendants Claypoole, Morris, Haggrity, Mayo, or Middendorf in any violation of Shepard's constitutional rights, the Court will grant the DOC Defendants' motion to dismiss all claims against them.

        C. The Amended Complaint fails to allege facts to support a retaliation claim against Michelle Overmeyer, Alfonzia Newsome, Ember Blinn, Eric Burns, or Heidi Dugan.

Like her original Complaint, Shepard's Amended Complaint asserts retaliation claims against Defendants Overmeyer, Newsome, Blinn, Burns, and Dugan and alleges generally that she "experienced an influx in retaliatory treatment after her PREA claim against Defendant Burns." ECF No. 82, p. 7. "To state a First Amendment retaliation claim, a prisoner plaintiff must allege (1) that the conduct which led to the alleged retaliation was constitutionally protected; (2) that he suffered some adverse action at the hands of the prison officials; and (3) a causal link between the [protected conduct] and the adverse action [in that the] conduct was a substantial or motivating factor in the decision to take that action." *Oliver v. Roquet*, 858 F.3d 180, 190 (3d Cir. 2017) (quoting *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001) (quotation marks omitted); *White v. Napoleon*, 897 F.2d 103, 111-12 (3d Cir. 1990)). An adverse action is one sufficient to "deter a person of ordinary firmness from exercising his First Amendment rights." *Allah v. Seiverling*, 229 F.3d 220, 225 (3d Cir. 2000) (internal quotations and citations omitted). The third element, causation, requires a plaintiff to establish either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link. *See Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007).

1.  Overmeyer and Newsome

The Amended Complaint again alleges that while Shepard was in the RHU, Superintendent Overmeyer commented, "You wouldn't be down here if you had not been boasting about filing a lawsuit." ECF No. 82, p. 7.  She alleges that her RHU placement was due to a "frivolous misconduct" charge made by Corrections Officer Newsome, a non-party to this action, who was subsequently fired by the DOC for improper sexual conduct towards inmates other than Shepard. *Id.* But Shepard does not allege that Overmeyer had any role in the misconduct charge or her RHU placement.  Instead, Shepard characterizes Overmeyer's statement as an admission that she was "in the RHU for filing a 1983 lawsuit," and she alleges that Overmeyer's statement "set a precedent to her insubordinates that this behavior is acceptable, further enabling the staff to target, abuse, harass, intimidate, and retaliate against the Plaintiff." *Id.*  Shepard's allegations fail to state a retaliation claim against Overmeyer for multiple reasons.   First, Shepard's reliance on Overmeyer's alleged reference to Shepard's "boasting about filing a lawsuit" is too vague to satisfy the protected conduct element of the claim.  Shepard does not connect this alleged reference to any actual lawsuit, nor does she identify against whom the suit was filed or when it was filed.  Second, the Amended Complaint does not support that Overmeyer took an adverse action against Shepard. As noted, she does not allege that Overmeyer had any role in the misconduct charge filed by Newsome or her placement in the RHU.  Third, even if the Court had some basis upon which to consider Newsome's misconduct charge as an adverse action by Overmeyer, Shepard's characterization of the charge as "frivolous" is conclusory and without factual allegations to support it. *See May v. Erie Cnty.*, 2025 WL 1920140, at *9 (W.D. Pa. July 11, 2025) (conclusory allegations unsupported by facts cannot support the adverse action element of a retaliation claim). Finally, the omission of dates and other details regarding Shepard's prior lawsuit or grievances

and alleged adverse actions prevents any plausible inference of a "pattern of antagonism coupled with timing" to support the causation element of a retaliation claim. *See James v. Wetzel*, 2024 WL 1333368, at *11 (M.D. Pa. Mar. 28, 2024).

Any retaliation claim against Newsome also fails for similar reasons. Although Shepard alleges that the misconduct charge he filed against her was false and frivolous, she alleges no facts to support these characterizations. Shepard also fails to allege facts to support a causal link between the misconduct charge and any prior protected conduct on her part. As the Amended Complaint does not support the essential elements of a retaliation claim against Overmeyer or Newsome, this claim will be dismissed.

2.   Blinn

In her original Complaint, Shepard alleged that Blinn retaliated against her by conducting an "investigative search, [a] search under false pretenses, [and] a 4th amd. search and seizure." ECF No. 62, p. 17. The Court dismissed that claim because the Complaint did not allege any predicate protected conduct of Shepard or the date, sequence, or circumstances of Blinn's adverse actions. ECF No. 63, p. 9. Shepard's Amended Complaint fails to remedy these deficiencies. It includes a single allegation that Blinn engaged in retaliatory conduct "in the form of vulgar language, frivolous misconducts, and destroying/damaging of Plaintiff's property." ECF No. 82, p. 7. These vague, conclusory allegations fail to support any of the elements of a retaliation claim against Blinn.

3.   Burns and Dugan

Like her original Complaint, the Amended Complaint alleges that Shepard filed a PREA complaint against Burns. *See id.*, p. 6. While this allegation clearly supports the protected conduct element of a retaliation claim, the Amended Complaint does not allege facts to support that Burns

11

took any adverse action against Shepard following this protected conduct. Instead, Shepard again resorts to the same conclusory allegation that several Defendants—including Burns—subjected her to vulgar language, frivolous misconduct charges, and destruction of property. ECF No. 82, p. 7. She does not identify any specific instance of such conduct, state who committed it, or when it occurred. The claim against Dugan also fails. Shepard alleges that Dugan initially refused to provide her with Burns' name "when requested for the purpose of filing [a] claim." *Id.* This is not an adverse action. Dugan's initial failure to provide information to Shepard was not the type of conduct that would deter a person from pursing her rights. And, in any event, Shepard obviously identified Burns and submitted her PREA complaint. Accordingly, the First Amendment retaliation claim against Burns and Dugan will also be dismissed.

> D. The Amended Complaint fails to allege facts to state a Fourteenth Amendment due process claim against any Defendant.

The Amended Complaint asserts a Fourteenth Amendment procedural due process claim relating to the handling of Shepard's PREA complaint against Burns and the alleged "frivolous misconducts" filed against her. *See* ECF No. 82, pp. 3, 7-8. Shepard alleges that her PREA complaint "was not handled appropriately by another named Defendant" in that "Plaintiff did not receive policy procedure treatment in regard to follow-up care for PREA." *Id.* She also alleges that "frivolous misconducts" authored by Defendant Newsome resulted in her placement in the RHU and affected her "chance at parole." *Id.*, p. 7-8. She claims that these actions "violat[ed] the Plaintiff's Fourteenth Amendment rights that guarantee that you shall not be deprived of life, liberty, or property without due process." *Id.*, p. 8.

To state a Fourteenth Amendment procedural due process claim, a plaintiff must allege facts to demonstrate that she was deprived of a liberty or property interest without due process of law. *Hill v. Borough of Kutztown*, 455 F.3d 225, 233-34 (3d Cir. 2006). Under this standard, the

Court only reaches the issue of the adequacy of the procedural process provided if the plaintiff first establishes an interest protected by the Due Process Clause of the Fourteenth Amendment. *See Renchenski v. Williams*, 622 F.3d 315, 325 (3d Cir. 2010) (instructing that a court reviewing a procedural due process claim first determines whether the plaintiff raises an interest protected by the Fourteenth Amendment and, if such an interest exists, then whether the procedures provided to the plaintiff afforded that individual due process of law) (citing *Alvin v. Suzuki,* 227 F.3d 107, 116 (3d Cir.2000)). Shepard's due process claim fails at the first step of the analysis because the Amended Complaint does not allege facts to support a protected interest.

Like her original Complaint, Shepard's Amended Complaint bases her due process claim on Newsome's allegedly "false" misconduct and her resulting placement in the RHU. *See* ECF No. 82, p. 7. Shepard thus urges the Court to find a liberty interest in her not being confined to the RHU based on a false report. But a liberty interest arises only "when severe changes in conditions of confinement amount to a grievous loss that should not be imposed without the opportunity for notice and an adequate hearing." *See Renchenski*, 622 F.3d at 325. "Because disciplinary detention and administrative segregation [are] the sort[s] of confinement that inmates should reasonably anticipate receiving at some point in their incarceration, [a plaintiff's] transfer to less amenable and more restrictive quarters [does] not implicate a liberty interest protected by the Due Process Clause." *Torres v. Fauver*, 292 F.3d 141, 150 (3d Cir. 2002). Shepard does not allege any facts to support that her disciplinary detention in the RHU imposed an atypical and significant hardship upon her such that the Fourteenth Amendment required due process protections. *See Diaz v. Canino*, 502 Fed. Appx. 214, 217 (3d Cir. 2012) (holding that state inmate's placement in RHU for 360 days of disciplinary confinement did not impose an atypical and significant hardship on inmate to implicate a protected liberty interest, and thus alleged

13

procedural deficiencies at misconduct hearing did not violate inmate's due process rights, even if inmate was exposed to continuous searches, subjected to regular relocation of his cell, and unable to sleep as a result of lights that remained turned on in RHU). Because the duration and conditions of Shepard's RHU confinement fail to implicate a due process violation, her procedural due process claim will be dismissed.[6]

     E.  The Amended Complaint fails to allege fact to support an Eighth Amendment claim against any DOC Defendant.

Like her original Complaint Shepard's Amended Complaint again asserts Eighth Amendment claims against several defendants based on factually unsupported conclusory allegations. These allegations include that she was victimized "physically and sexually by Defendant Burns." ECF No. 82, p. 6. Without question, a prison guard's sexual assault of an inmate violates the Eighth Amendment. *See Ricks v. Shover*, 891 F.3d 468, 473 (3d Cir. 2018) (recognizing that "sexual abuse of prisoners, once overlooked as a distasteful blight on the prison system, offends our most basic principles of just punishment") (quoting *Crawford v. Cuomo*, 796 F.3d 252, 260 (2d Cir. 2015)). But Shepard's allegations regarding this claim are entirely conclusory. *See* ECF No. 82, p. 4 ("Plaintiff also experienced sexual violation from Defendant Burns in which Plaintiff filed a PREA claim" which "was not handled appropriately by another named Defendant."). She alleges no facts whatsoever regarding the conduct that Shepard claims constituted the sexual violation or when and where it occurred. This information is necessary to determine the sufficiency of her Eighth Amendment claim. As the Court of Appeals for the Third Circuit has held, "in contrast to common tort law, the Eighth Amendment shields inmates from only those actions 'repugnant to the conscience of mankind,'" and "[w]hen deciding objective

---

[6] Additionally negating Shepard's claim, the Amended Complaint does not allege that Overmeyer was personally involved in placing her in the RHU.

harm, 'not ... every malevolent touch by a prison guard gives rise to a federal cause of action.'" *Ricks*, 891 F.3d at 475 (quoting *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)). Because the "objective element" of an Eighth Amendment claim is "contextual and responsive to 'contemporary standards of decency,'" conditions are unconstitutional only if they offend contemporary standards. *Id.* (citations omitted). This means it is not enough to label unspecified conduct a "sexual assault." Instead, the plaintiff must allege facts to support an inference that the conduct was without adequate penological justification and offended contemporary standards of decency. *See, e.g., id.* at 476 ("when a search involves intrusive, intimate touching to ensure that contraband and weapons are not present, an inquiry into its purpose is legitimate" and helps inform whether an Eighth Amendment violation has occurred). Shepard's Amended Complaint alleges no such facts to support her conclusory allegations regarding Burns' offensive contact. It therefore fails to support the inferences necessary to state an Eighth Amendment claim.

Shepard also alleges that her Eighth Amendment rights were violated when she was wrongfully placed in the RHU based on "frivolous misconducts." ECF No. 82, p. 7. "To prove a violation of the Eighth Amendment, an inmate must show that he has been deprived of 'the minimal civilized measure of life's necessities.'" *Griffin v. Vaughn*, 112 F.3d 703 (3d Cir.1997). The Amended Complaint alleges no conditions of Shepard's confinement in the RHU to support a plausible inference that she was deprived of the minimal civilized measure of life's necessities. She also fails to attribute her RHU placement to any specific defendant. *See Castro-Mota v. Cook*, 2025 WL 1724922, at *8 (W.D. Pa. June 20, 2025) (claim dismissed for failure to attribute allegations to any defendant); *Buxton v. Wetzel*, 2022 WL 4084292, at *7 (W.D. Pa. Aug. 3, 2022), *report and recommendation adopted*, 2022 WL 4082129 (Sept. 6, 2022) ("Throughout the

Complaint, Plaintiff refers to Defendants collectively and Plaintiff does not attribute any misconduct to any specific individual.").

The Amended Complaint also raises an Eighth Amendment claim against Defendant Dreischalick based on Shepard's assertion that she acted with deliberate indifference to her serious medical needs. The factual allegations regarding this claim are more developed than those against the other defendants. Shepard alleges that she was scheduled to be transported to an off-site medical appointment on November 30, 2022, but a medical officer failed to contact Shepard's block officer to ensure that Shepard was prepared for off-site transport. ECF No. 82, p. 2. This resulted in her being late for off-site preparation. *Id.* Upon her arrival at the medical department, Dreischalick was "verbally aggressive" towards Shepard. *Id.* Shepard was then subjected to a strip search, which the Amended Complaint acknowledges is a routine DOC practice before any inmate is transported to an off-site appointment. *Id.* During this search, Shepard alleges that Dreischalick was aggressive in disposition and used profanity towards her. *Id.* She claims Dreischalick's actions were "degrading in nature" and amounted to punishment and humiliation. *Id.* Once the search was completed, Dreischalick then escorted Shepard to the transport vehicle. *Id.* p. 3. As Shepard walked to the transport vehicle, her vision was obscured by heavy rain on her glasses. *Id.* Shepard was told to "step up" into the vehicle but tripped and fell "with her hands cuffed in front of her and her feet shackled making it impossible to brace her fall effectively." *Id.* p. 3. She sustained facial and other injuries and had to use a wheelchair for eight months due to "limited mobility" after the incident. *Id.*

Shepard's claim based on Dreischalick's strip search is most appropriately analyzed under the Eighth Amendment. *See Parkell v. Danberg*, 833 F.3d 313, 336 (3d Cir. 2016) ("A prisoner states a claim under the Eighth Amendment when he plausibly alleges that the strip-search in

question was motivated by a desire to harass or humiliate....") (quoting *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995)).[7]  As noted, the Eighth Amendment inquiry focuses on whether the physical contact was grounded in a penological justification or maliciously motivated and offensive to contemporary standards of decency.  *Ricks*, 891 F.3d at 475-76.  Security and contraband considerations clearly provide a penological justification for a strip search before an inmate is transported to an off-site medical appointment.   Although Shepard asserts that Dreischalick made offensive comments to her during the search, such comments do not alone support an Eighth Amendment violation, especially absent allegations that the strip search was conducted with inappropriate physical contact.  *See Parkell*, 833 F.3d at 336 (citing *DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000) (mere verbal sexual harassment without accompanying physical contact is not enough to state a claim for Eighth Amendment violation)); *see also Chambliss v. Jones*, 2015 WL 328064, at *3 (M.D. Pa. Jan. 26, 2015) (finding that "sexual comments and gestures," without allegations of physical contact or pain, did not rise to the level of an Eighth Amendment violation).  And Shepard's vague claim of humiliation is insufficient. *See Cobb v. PrimeCare Med. Corp.*, 2020 WL 13729620, at *11 (M.D. Pa. Jan. 29, 2020), *report and recommendation adopted*, 2020 WL 13730063 (M.D. Pa. Feb. 24, 2020) (claim of humiliation is not sufficient to state an Eighth Amendment violation).  Because Shepard's Amended Complaint fails to allege facts to support that Dreischalick's strip search was conducted maliciously or without penological justification, it provides no basis for an Eighth Amendment claim.  And the other facts alleged regarding Dreischalick's conduct preceding Shepard's trip and fall incident on November 30, 2022, fail to support that she intended to assault or otherwise cause harm or injury

---

[7] An inmate's challenge to a strip search may also be brought under the Fourth Amendment. As a Fourth Amendment claim, a prisoner must show that the strip search was unreasonable. *Allemandi v. Munoz*, 2018 WL 716986, *6 (D. De., Feb. 5, 2018) Here, the Amended Complaint does not challenge the reasonableness of strip searches of inmates prior to transport to off-site appointments. ECF No. 82, p. 2.

to Shepard. At most, Shepard's allegations support a claim that Dreischalick was not sufficiently attentive to Shepard as she attempted to enter the transport van in the rain. Such an inference, however, does not support an Eighth Amendment claim.

## V.    Conclusion

For the foregoing reasons, the Defendants' motion to dismiss Shepard's Amended Complaint will be GRANTED.

Most of the deficiencies in Shepard's Amended Complaint are the same as those the Court previously identified in her original Complaint. *See* Memorandum Opinion at ECF No. 63. Shepard's claims for monetary damages against the DOC Defendants in their official capacities are dismissed with prejudice as the legal insufficiency of such claims cannot be cured by amendment.

The deficiencies in Shepard's remaining claims are primarily failures to allege facts to support the personal involvement of Defendants or to support the necessary elements of her claims. Shepard's failure to allege facts to cure these deficiencies after the Court previously identified them may reflect that further amendment would be futile. Nevertheless, considering Shepard's pro se status, the Court will grant her one final opportunity to amend.

Any second amended complaint filed by Shepard must comply with Federal Rule of Civil Procedure 10(b) and be organized "in numbered paragraphs, each limited as far as practicable to a single set of circumstances." To the extent Shepard intends to reassert claims against some or all DOC Defendants, her pleading must, as explained herein, allege facts to support the personal involvement of each Defendant. The sequence and timing of events and conduct are often necessary information to support a claim, including any claim asserting unlawful retaliation. Shepard should endeavor to allege the material facts upon which she bases her claims in

18

chronological order and, when possible, to include the dates or approximate dates of relevant events.  Conclusions of law and proposed inferences without supporting factual allegations are inadequate to support any claim.

A separate order follows.

DATED this 3rd day of November, 2025.


BY THE COURT:

RICHARD A. LANZILLO
CHIEF UNITED STATES MAGISTRATE JUDGE